**FILED**

MAY – 8 2014

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
DEPUTY CLERK

1  BENJAMIN B. WAGNER
United States Attorney
2  MICHAEL M. BECKWITH
Assistant United States Attorney
3  501 I Street, Suite 10-100
Sacramento, CA 95814
4  Telephone: (916) 554-2700
5  Facsimile: (916) 554-2900

6  Attorneys for Plaintiff
United States of America
7

8              IN THE UNITED STATES DISTRICT COURT

9              EASTERN DISTRICT OF CALIFORNIA

10

11  UNITED STATES OF AMERICA,          CASE NO.  2:14-cr-067 TLN

12                  Plaintiff,          PLEA AGREEMENT

13         v.                          DATE: May 8, 2014
                                       TIME: 9:30 a.m.
14  DEEPAL WANNAKUWATTE,                COURT: Hon. Troy L. Nunley

15                  Defendant.

16

17                 **I.     INTRODUCTION**

18      **A.     Scope of Agreement**

19          The superseding information in this case charges the defendant with a violation of 18 U.S.C. §

20  1343 – Wire Fraud. This document contains the complete plea agreement between the United States

21  Attorney's Office for the Eastern District of California (the "government") and the defendant regarding

22  this case. This plea agreement is limited to the United States Attorney's Office for the Eastern District

23  of California and cannot bind any other federal, state, or local prosecuting, administrative, or regulatory

24  authorities.

25      **B.     Rule 11(c)(1)(C) Specific Sentence Agreement**

26          The government and the defendant agree that a specific sentence, set forth below in Section

27  VI.C, is appropriate in this case. Consequently, this Plea Agreement is being offered to the Court

28  pursuant to Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure.

PLEA AGREEMENT                          1

1    Under the provisions of Rule 11(c)(3), the Court may accept or reject the Plea Agreement, or

2  may defer its decision as to the acceptance or rejection until there has been an opportunity to consider

3  the pre-sentence report.  If the Court accepts the Plea Agreement, the Court will inform the defendant

4  that it will embody in the judgment and sentence the disposition provided for in this Plea Agreement.  If

5  the Court rejects this Plea Agreement, the Court shall so advise the defendant, allow the defendant the

6  opportunity to withdraw his plea, and advise him that if he persists in a guilty plea the disposition of the

7  case may be less favorable to him than is contemplated by this Plea Agreement.

8                              **II.    DEFENDANT'S OBLIGATIONS**

9        **A.    Guilty Plea**

10       The defendant will plead guilty to the single count in the superseding information, which charges

11  a violation of 18 U.S.C. § 1343 – Wire Fraud.  The defendant agrees that he is in fact guilty of that

12  charge.  He also agrees that the facts set forth in the Factual Basis For Plea (attached hereto as Exhibit

13  A) are true and accurate.

14       The defendant agrees that this plea agreement will be filed with the Court and become a part of

15  the record of the case.  The defendant agrees that the statements made by him in signing this Agreement,

16  including the factual admissions set forth in the factual basis, shall be admissible and useable against the

17  defendant by the United States in any subsequent criminal or civil proceedings, even if the defendant

18  fails to enter a guilty plea pursuant to this Agreement.  The defendant waives any rights under Rule 11(f)

19  of the Federal Rules of Criminal Procedure and Rule 410 of the Federal Rules of Evidence, to the extent

20  that these rules are inconsistent with this paragraph or with this Agreement generally.

21       **B.    Fine**

22       Pursuant to Guideline § 5E1.2, the defendant agrees to pay $25,000 as a criminal fine.  The fine

23  shall be paid by delivering a cashier's check or money order payable to the United States District Court

24  to the United States Probation Office.  The defendant understands that this plea agreement is voidable at

25  the option of the government if he fails to pay the stipulated fine seven days prior to his scheduled court

26  appearance for sentencing.

27  ///

28  ///

PLEA AGREEMENT                                           2

## C. Special Assessment

The defendant agrees to pay a special assessment of $100 at the time of sentencing by delivering a check or money order payable to the United States District Court to the United States Probation Office immediately before the sentencing hearing. The defendant understands that this plea agreement is voidable at the option of the government if he fails to pay the assessment prior to that hearing. If the defendant is unable to pay the special assessment at the time of sentencing, he agrees to earn the money to pay the assessment, if necessary by participating in the Inmate Financial Responsibility Program.

## D. Cooperation Requirement

The defendant agrees to cooperate fully with the government and any other federal, state, or local law enforcement agency, as directed by the government. As used in this plea agreement, "cooperation" requires the defendant: (1) to respond truthfully and completely to all questions, whether in interviews, in correspondence, telephone conversations, or at any trial or other proceeding; (2) to attend all meetings, trials, and other proceedings at which the defendant's presence is requested by the government or compelled by subpoena or court order; (3) to produce voluntarily any and all documents, records, or other tangible evidence requested by the government; (4) not to participate in any criminal activity while cooperating with the government; (5) to disclose to the government the existence and status of all money, property, or assets, of any kind, derived from or acquired as a result of, or used to facilitate the commission of, the defendant's illegal activities or the illegal activities of any conspirators; (6) to file for bankruptcy, no later than May 31, 2014, on behalf of any businesses in which the defendant has a financial interest under Chapter 11, Title 11, of the U.S. Bankruptcy Code and stipulate to the appointment of a trustee; (7) to file for personal bankruptcy, no later than May 31, 2014, under a chapter of Title 11 of the U.S. Bankruptcy Code of the defendant's choosing, but if the defendant chooses to file under Chapter 11, Title 11, of the U.S. Bankruptcy Code, he must stipulate to the appointment of a trustee; (8) to fully and truthfully disclose the existence, nature and location of all assets forfeitable to the United States, either directly or as substitute assets, in which he and/or his co-conspirators have or had any direct or indirect financial interest, or exercise or exercised control, directly or indirectly, during the period from December 4, 2002 to the present; (9) to undergo any polygraph examination the United States might choose to administer concerning the identification and recovery of all such forfeitable

PLEA AGREEMENT                           3

1  assets; (10) to provide and/or consent to the release of all of the defendant's federal and state income tax

2  returns, both individual and corporate, from 2002 through the present; and (11) not to assist any third

3  party in asserting a claim to the forfeited assets in an ancillary proceeding, and to testify truthfully in any

4  such proceeding.

5        **E.     Defendant's Violation of Plea Agreement or Withdrawal of Plea**

6        If the defendant violates this plea agreement in any way, withdraws his plea, or tries to withdraw

7  his plea, this plea agreement is voidable at the option of the government.  The government will no longer

8  be bound by its representations to the defendant concerning the limits on criminal prosecution and

9  sentencing as set forth herein.  One way a defendant violates the plea agreement is to commit any crime

10  or provide any statement or testimony which proves to be knowingly false, misleading, or materially

11  incomplete.  Any post-plea conduct by a defendant constituting obstruction of justice will also be a

12  violation of the agreement.  The determination whether the defendant has violated the plea agreement

13  shall be decided under a probable cause standard.

14        If the defendant violates the plea agreement, withdraws his plea, or tries to withdraw his plea, the

15  government shall have the right: (1) to prosecute the defendant on any of the counts to which he pleaded

16  guilty; (2) to reinstate any counts that may be dismissed pursuant to this plea agreement; and (3) to file

17  any new charges that would otherwise be barred by this plea agreement.  The defendant shall thereafter

18  be subject to prosecution for any federal criminal violation of which the government has knowledge,

19  including perjury, false statements, and obstruction of justice.  The decision to pursue any or all of these

20  options is solely in the discretion of the United States Attorney's Office.

21        By signing this plea agreement, the defendant agrees to waive any objections, motions, and

22  defenses that the defendant might have to the government's decision to exercise the options stated in the

23  previous paragraph.  Any prosecutions that are not time-barred by the applicable statute of limitations as

24  of the date of this plea agreement may be commenced in accordance with this paragraph,

25  notwithstanding the expiration of the statute of limitations between the signing of this plea agreement

26  and the commencement of any such prosecutions.  The defendant agrees not to raise any objections

27  based on the passage of time with respect to such counts including, but not limited to, any statutes of

28  ///

PLEA AGREEMENT                                    4

1  limitation or any objections based on the Speedy Trial Act or the Speedy Trial Clause of the Sixth

2  Amendment to any counts that were not time-barred as of the date of this plea agreement.

3       In addition: (1) all statements made by the defendant to the government or other designated law

4  enforcement agents, or any testimony given by the defendant before a grand jury or other tribunal,

5  whether before or after this plea agreement, shall be admissible in evidence in any criminal, civil, or

6  administrative proceedings hereafter brought against the defendant; and (2) the defendant shall assert no

7  claim under the United States Constitution, any statute, Rule 11(f) of the Federal Rules of Criminal

8  Procedure, Rule 410 of the Federal Rules of Evidence, or any other federal rule, that statements made by

9  the defendant before or after this plea agreement, or any leads derived therefrom, should be suppressed.

10  By signing this plea agreement, the defendant waives any and all rights in the foregoing respects.

11  **F.   Forfeiture**

12       The defendant agrees to forfeit to the United States, voluntarily and immediately, all of his right

13  title and interest to any and all assets subject to forfeiture, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28

14  U.S.C. § 2461(c).  Those assets include, but are not limited to, the following:

15  *Real Property located at*:

16       1.     14 Fig Leaf Court, Sacramento, CA (Sacramento County), APN: 226-0360-024;

17       2.     1922 Richmond Street, Sacramento, CA (Sacramento County), APN: 279-0182-004;

18       3.     21145 Hummingbird Court, Bodega Bay, CA (Sonoma County), APN: 100-252-017;

19       4.     2120 22nd Avenue, Sacramento, CA (Sacramento County), APN: 018-0073-002;

20       5.     3077 Tintorera Way, Sacramento, CA (Sacramento County), APN: 225-1680-068;

21       6.     31660 County Road 27, Woodland, CA (Yolo County), APN: 050-110-004;

22       7.     5111 Pleasant Drive, Sacramento, CA (Sacramento County), APN: 016-0153-024;

23       8.     5231 Pleasant Drive, Sacramento, CA (Sacramento County), APN: 016-0272-014;

24       9.     5131 S. Land Park Drive, Sacramento, CA (Sacramento County), APN: 016-0233-025;

25       10.    1257 Noonan Drive, Sacramento, CA (Sacramento County), APN: 016-0233-025;

26       11.    940 44th Street, Sacramento, CA (Sacramento County), APN: 008-0092-008;

27       12.    30562 Old Coast High Way, Gold Beach, OR (Curry County), APN: 3615-25BB-02000;

28       13.    62-3506 Kaunaoa Lii Place, #9B, Kamuela, HI (Hawaii County), APN: 3-6-2-19-29-12;

14.      62-3955 Kaunaoa Iki Road, #6A, Kamuela, HI (Hawaii County), APN: 3-6-2-19-29-5;

15.      879 F Street, West Sacramento, CA (Yolo County), APN: 010-340-021;

16.      1307 Furneaux Road, Olivehurst, CA (Yuba County), APN: 013-410-117;

*Vehicles described as*:

17.      a 2008 Infiniti M45S, VIN: JNKBY01EX8M500746, CA Plate: 6GLR121;

18.      a 2003 BMW X5 (Wagon), VIN: 5UXFB93513LN79937, CA Plate: 5ATD906;

19.      a 2002 Lexus SC430 (Convertible), VIN: JTHFN48Y320003389, CA Plate: 4RYY560;

20.      a 1998 Lexus SC400 (Convertible), VIN: JT8CH32Y8W1000906, CA Plate: 3XRV793;

*Financial Accounts described as*:

21.      Approximately $150,000.00 held in a California Bank and Trust certificate of deposit, account number CD 1250006713;

22.      Approximately $394.49 held in California Bank and Trust account number 12-501320-11, held in the name of Capital Sports Management, LLC;

23.      Approximately $356.49 held in California Bank and Trust account number 12-501196-91, held in the name of Clover Ranch, LLC;

24.      Approximately $625.23 held in California Bank and Trust account number 12-501336-81, held in the name of DBS Air, LLC;

25.      Approximately $4,466.35 held in California Bank and Trust account number 12-502271-56, held in the name of Deepal S. and Betsy K. Wannakuwatte;

26.      Approximately $84.22 held in California Bank and Trust account number 12-501646-46, held in the name of Deepal Wannakuwatte & David L. Gordon;

27.      Approximately $2,056.86 held in California Bank and Trust account number 12-500901-81, held in the name of Jamestown Health & Medical Supply Co, LLC;

28.      Approximately $76.02 held in California Bank and Trust account number 12-501039-39, held in the name of JTS Communities, Inc.;

29.      Approximately $304.53 held in California Bank and Trust account number 12-501140-39, held in the name of SKW Trading & Marketing/Sarah K. Wannakuwatte;

///

1      30.    Approximately $38.51 held in California Bank and Trust account number 12-501273-61,

2  held in the name of SKW Trading & Marketing/Sarah K. Wannakuwatte;

3      31.    Approximately $490.00 held in California Bank and Trust account number 12-501248-

4  51, held in the name of Wannas Serendipity Charitable Foundation;

5      32.    Approximately $44.23 held in East West Bank account number 26-140011985, held in

6  the name of Deepal S. or Betsy K. Wannakuwatte;

7      33.    Approximately $52.00 held in East West Bank account number 80-78001453, held in the

8  name of Denniston DB, LLC;

9      34.    Approximately $68,348.28 held in East West Bank account number 80-78001230, held in

10  the name of International Manufacturing Group, Inc.;

11      35.    Approximately $37,668.48 held in Farmers and Merchants Bank account number 31-

12  014895-01, held in the name of International Manufacturing Group/dba Relyaid/dba Relyaid Tattoo

13  Supply/dba Desco Dental;

14      36.    Approximately $72.09 held in First Hawaiian Bank account number 67-806727, held in

15  the name of Deepal S. & Betsy K. Wannakuwatte;

16      37.    Approximately $134.45 held in North Valley Bank account number 4302004169, held in

17  the name of International Manufacturing Group, Inc.;

18      38.    Approximately $219.71 held in Bank of the West account number 246-000-760151, held

19  in the name Betsy K. Wannakuwatte;

20      39.    Approximately $3,280.74 held in Bank of the West account number 246-000-76078, held

21  in the name Deepal S. Wannakuwatte;

22      40.    Approximately $17,127.29 held in Bank of the West account number 023-487801, held

23  in the name Olivehurst Glove Manufacturers LLC;

24      41.    Approximately $27,212.22 held in American Funds/The Capital Group account number

25  62608177, held in the name Deepal Wannakuwatte;

26  *Insurance Policies described as*:

27      42.    Cash value of Nationwide life insurance policy number 01-5097622, held in the name

28  Deepal Wannakuwatte, valued at approximately $25,258.51;

PLEA AGREEMENT             7

43.     Cash value of Nationwide life insurance policy number N100446510, held in the name Deepal and Betsy Wannakuwatte Irrevocable Trust, valued at approximately $24,831.08;

44.     Cash value of Nationwide life insurance policy number N600006930, held in the name International Manufacturing Group, Inc., valued at approximately $104,469.67;

*Checks and Money Orders described as*:

45.     Check number 1581 for $10,500.00 dated March 3, 2014, and made payable to Olivehurst Glove Manufacturing, LLC.

46.     Check number 06331158 for $564.56 from the U.S. Treasury dated March 4, 2014, and made payable to Olivehurst Glove Manufacturers, LLC.

47.     Check number 018012 for $600.00 dated February 6, 2014, and made payable to Deepal S. and Betsy K. Wannakuwatte.

48.     Check number 015041 for $648.65 dated February 6, 2014, and made payable to Deepal S. and Betsy K. Wannakuwatte.

49.     Check number 0097679894 for $1,300.00 dated April 10, 2014, and made payable to Betsy Wannakuwatte.

50.     Personal money order number 7054012632 for $377.00 dated April 4, 2014, with "Pay to the order of" left blank.

51.     Personal money order number 0036221324 for $755.00 dated April 4, 2014, and made payable to Betsy Wannakuwatte.

*Other Assets described as*:

52.     River Bend Park Apartments, LLC; Entity Number: 201108810009.

53.     1235 Glenhaven Court, LCC, Entity Number: 201103210150.

54.     Cash value of any federal or state income tax refunds due in relation to any federal or state tax returns, either corporate or personal, filed by the defendant between 2002 and 2014.

The defendant agrees that the listed assets constitutes property, real or personal, derived from proceeds traceable to a violation of 18 U.S.C. § 1343 – Wire Fraud.

The defendant agrees to fully assist the government in the forfeiture of the listed assets and to take whatever steps are necessary to pass clear title or his full interest to the United States, including but

1 not limited to executing any and all documents necessary to transfer such title or interest, assisting in
2 bringing any assets located outside of the United States within the jurisdiction of the United States, and
3 taking whatever steps are necessary to ensure that assets subject to forfeiture are not sold, disbursed,
4 wasted, hidden or otherwise made unavailable for forfeiture. In addition, the defendant shall not sell,
5 transfer, convey, or otherwise dispose of any of his assets, including but not limited to, the listed assets.

6       The defendant also voluntarily stipulates and agrees that as part of his sentence the Court may,
7 pursuant to Fed. R. Crim. P. 32.2(b), order a forfeiture money judgment in an amount to be determined
8 by the U.S. Probation Office prior to sentencing, less any forfeited funds.

9       The defendant agrees not to file a claim to any of the listed property in any civil proceeding,
10 administrative or judicial, which may be initiated. The defendant agrees to waive his right to notice of
11 any forfeiture proceeding involving this property, and agrees to not file a claim or assist others in filing a
12 claim in that forfeiture proceeding.

13       The defendant knowingly and voluntarily waives his right to a jury trial on the forfeiture of
14 assets. The defendant knowingly and voluntarily waives all constitutional, legal and equitable defenses
15 to the forfeiture of these assets in any proceeding. The defendant agrees to waive any jeopardy defense,
16 and agrees to waive any claim or defense under the Eighth Amendment to the United States
17 Constitution, including any claim of excessive fine, to the forfeiture of the assets by the United States,
18 the State of California or its subdivisions.

19       The defendant waives oral pronouncement of forfeiture at the time of sentencing, and any
20 defenses or defects that may pertain to the forfeiture.

21     **G.**   **Restitution**

22       By signing this agreement, the defendant agrees, pursuant to 18 U.S.C. §§ 3663(a)(1) and (a)(3),
23 that the Court can order the payment of restitution for the full loss caused by his wrongful conduct.

24       The defendant will consent to entry of an order directing the defendant's payment of restitution
25 in full to any person or entity who qualifies as a victim of the offense of conviction under 18 U.S.C. §
26 3663 or § 3663A. The defendant agrees that the restitution order is not restricted to the amounts related
27 to or alleged in the specific count to which the defendant has pleaded guilty and may include all relevant
28 conduct. The defendant specifically agrees that an order from the Court directing the payment of at least

PLEA AGREEMENT      9

$50,000,000 in restitution is necessary to address the losses suffered by the victims of the defendant's various fraud schemes.

The defendant further understands and agrees to the following aspects of restitution:

1. The restitution described herein creates a lien in favor of the United States on all property and rights to property of the defendant. Pursuant to 18 U.S.C. § 3613, the lien arises on the entry of judgment and continues for at least twenty (20) years or until the debt is paid in full.

2. This order of restitution cannot be discharged in bankruptcy.

3. Any fine, forfeiture, or restitution imposed by the Court against defendant will be due immediately and subject to immediate collection by the United States. The United States may seek immediate collection of the entire fine, forfeiture, or restitution from any assets without regard to any schedule of payments imposed by the Court or established by the Probation Office.

4. If the defendant defaults on the payment of a fine or restitution, the Court may revoke the probation or a term of supervised release, modify the terms of or conditions of probation or supervised release, resentence the defendant under 18 U.S.C. § 3614, or under 18 U.S.C. § 3613A, hold the defendant in contempt of court, order the sale of property, enter or adjust a payment schedule, or take any action necessary to obtain compliance.

Any restitution payment shall also be made by cashier's or certified check and payable to the "Clerk, United States District Court."

The defendant understands that this plea agreement is voidable at the option of the United States if the government concludes that the defendant has failed to pay the restitution in accordance with the plea agreement in this case.

If the defendant is unable to pay the restitution at the time of sentencing, he agrees to earn the money to pay the restitution, if necessary, by participating in the Inmate Financial Responsibility Program. The defendant agrees to comply with any restitution order issued by this Court.

**H.    Waiver of Indictment**

The defendant agrees to waive his right to indictment to the charge in the superseding information. At the entry of plea proceeding, he will sign a written waiver of prosecution by indictment and consent to proceed under the superseding information rather than by indictment.

1    **I.    Asset Disclosure**

2        The defendant agrees to make a full and complete disclosure of his assets, sources of income,

3    and financial condition as set forth below, and further understands the following aspects of Asset

4    Disclosure:

5        1.    Within thirty (30) days of the execution of this Plea Agreement, defendant shall

6    complete, under penalty of perjury, a financial statement provided by the U.S. Attorney's Office and to

7    update the statement with material changes within seven days of the change.  He further agrees to

8    provide within this 30 day period copies of all documents responsive to the categories of documents

9    sought by the financial statement.

10       2.    Defendant shall identify all assets and financial interests.  The assets and financial

11   interests to be identified include all assets and financial interests in which he has an interest (or in which

12   had an interest), direct or indirect, whether held in his own name or in the name of another, in any

13   property, real or personal.

14       3.    Upon execution of this plea agreement, the United States is authorized to run

15   credit reports on the defendant and to share the reports with the Court and the U.S. Probation Office.

16   Further, that upon request of the Court, the government, or the Probation Office, defendant agrees to

17   provide accurate and complete financial information, submit sworn statements and give depositions

18   under oath concerning his assets and ability to pay, to surrender assets defendant obtained as a result of

19   his crimes, and to release funds and property under defendant's control in order to pay any fine,

20   forfeiture, or restitution.

21       4.    Defendant shall notify the Financial Litigation Unit, United States Attorney's

22   Office, before transferring any interest in property owned directly or indirectly by him, including any

23   interest held or owned under any other name or entity, including trusts, partnerships and/or corporations.

24   Defendant shall notify the Financial Litigation Unit, United States Attorney's Office, of any interest in

25   property obtained, directly or indirectly, including any interest obtained under any other name, or entity,

26   including a trust, partnership or corporation after the execution of this plea agreement until the fine or

27   restitution is paid in full.

28   ///

1    The defendant understands that this plea agreement is voidable at the option of the government if
2    the defendant fails to complete truthfully and provide the described documentation to the United States
3    Attorney's Office within the allotted time.  The defendant also agrees to have the Court enter an order to
4    that effect.

5                    III.    THE GOVERNMENT'S OBLIGATIONS
6        A.    Dismissals

7        The government agrees to move, at the time of sentencing, to dismiss without prejudice the
8    remaining counts in the pending indictment.  The government also agrees not to reinstate any dismissed
9    count except if this agreement is voided as set forth herein, or as provided in paragraphs II.D
10   (Cooperation),  II.E (Violation of Plea Agreement), VI.B (Guidelines Calculations), and VII.B (Waiver
11   of Appeal) herein.

12       B.    Recommendations
13            1.    Incarceration Range

14       The parties will jointly recommend, in accordance with paragraph I.B above, that the
15   defendant be sentenced to 240 months (20 years) of imprisonment for his offense.

16            2.    Acceptance of Responsibility

17       The government will recommend a two-level reduction (if the offense level is less than
18   16) or a three-level reduction (if the offense level reaches 16) in the computation of defendant's offense
19   level if he clearly demonstrates acceptance of responsibility for his conduct as defined in U.S.S.G. §
20   3E1.1. This includes the defendant meeting with and assisting the probation officer in the preparation of
21   the pre-sentence report, being truthful and candid with the probation officer, and not otherwise engaging
22   in conduct that constitutes obstruction of justice within the meaning of U.S.S.G § 3C1.1) either in the
23   preparation of the pre-sentence report or during the sentencing proceeding.

24       C.    Use of Information for Sentencing

25       The government is free to provide full and accurate information to the Court and the United
26   States Probation Office ("Probation"), including answering any inquiries made by the Court and/or
27   Probation, and rebutting any inaccurate statements or arguments by the defendant, his attorney,
28   Probation, or the Court.  The defendant also understands and agrees that nothing in this Plea Agreement

1  bars the government from defending on appeal or collateral review any sentence that the Court may
2  impose.

3     Further, other than as set forth above, the government agrees that any incriminating information
4  provided by the defendant during his cooperation will not be used in determining the applicable
5  guideline range, pursuant to U.S.S.G. § 1B1.8., unless the information is used to respond to
6  representations made to the Court by the defendant, or on his behalf, that contradict information
7  provided by the defendant during his cooperation.

8                           **IV.    ELEMENTS OF THE OFFENSE**

9     At a trial, the government would have to prove beyond a reasonable doubt the following
10  elements of the offense to which the defendant is pleading guilty:  (1) the defendant knowingly devised
11  and participated in a scheme or plan to defraud, or a scheme or plan for obtaining money or property by
12  means of false or fraudulent pretenses, representations, or promises; (2) the statements made or facts
13  omitted as part of the scheme were material; that is, they had a natural tendency to influence, or were
14  capable of influencing, a person to part with money or property; (3) the defendant acted with the intent
15  to defraud, that is, the intent to deceive or cheat; and (4) the defendant used, or caused to be used, a wire
16  communication to carry out or attempt to carry out an essential part of the scheme.

17     The defendant fully understands the nature and elements of the crime charged in the superseding
18  information to which he is pleading guilty, together with the possible defenses thereto, and has discussed
19  all of these issues with his attorney.

20                           **V.    MAXIMUM SENTENCE**

21     **A.    Maximum Penalty**

22     The maximum sentence that the Court can impose is 20 years of incarceration, a fine of
23  $250,000, a three-year period of supervised release, and a special assessment of $100.  By signing this
24  plea agreement, the defendant also agrees that the Court can order the payment of restitution for the full
25  loss caused by the defendant's wrongful conduct.

26     **B.    Violations of Supervised Release**

27     The defendant understands that if he violates a condition of supervised release at any time during
28  the term of supervised release, the Court may revoke the term of supervised release and require the

PLEA AGREEMENT                          13

1  defendant to serve up to two years of additional imprisonment.

2  ## VI.    SENTENCING DETERMINATION

3  ### A.    Statutory Authority

4  The defendant understands that the Court must consult the Federal Sentencing Guidelines and
5  must take them into account when determining a final sentence. The defendant understands that the
6  Court will determine a non-binding and advisory guideline sentencing range for this case pursuant to the
7  Sentencing Guidelines and must take them into account when determining a final sentence. The
8  defendant further understands that the Court will consider whether there is a basis for departure from the
9  guideline sentencing range (either above or below the guideline sentencing range) because there exists
10  an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into
11  consideration by the Sentencing Commission in formulating the Guidelines. The defendant further
12  understands that the Court, after consultation and consideration of the Sentencing Guidelines, must
13  impose a sentence that is reasonable in light of the factors set forth in 18 U.S.C. § 3553(a).

14  ### B.    Guideline Calculations

15  The government and the defendant agree that there is no material dispute as to the following
16  sentencing guidelines variables and therefore stipulate to the following:

17  **1. Base Offense Level: 7**

18  Pursuant to Guideline § 2B1.1(a)(1), the parties agree that the offense of conviction has a
19  statutory maximum term of imprisonment of 20 years or more.

20  **2. Loss Amount: +24**

21  Pursuant to Guideline § 2B1.1(b)(1)(M), the parties agree that the total loss amount in this case is
22  over $50,000,000.

23  **3. Victims: +4**

24  Pursuant to Guideline § 2B1.1(b)(2)(B), the parties agree that the number of victims in this case
25  is over 50, but less than 250.

26  **4. Sophisticated Means: +2**

27  Pursuant to Guideline § 2B1.1(b)(10)(C), the parties agree that the defendant used a variety of
28  sophisticated means to carry out his various fraud schemes.

PLEA AGREEMENT                          14

**5.  Fraud Against a Financial Institution:** +2

Pursuant to Guideline § 2B1.1(b)(16)(A), the parties agree that the defendant derived more than $1,000,000 in gross receipts from one or more financial institutions as a result of his wrongful conduct.

**6.  Aggravating Role:** +2

Pursuant to Guideline § 3B1.1(c), the parties agree that the defendant played an aggravating role in the offense by organizing and directing the activities of other criminal participants.

**7.  Acceptance of Responsibility:** -3

If the requirements of Paragraph III.B.2 are satisfied, the government will not oppose a three-level reduction in the overall offense level for the defendant's full and complete acceptance of responsibility.

**8.  Adjusted Offense Level:** 38

**C.  Agreement for a Specific Sentence:**  Assuming the defendant falls into criminal history category I, the parties currently estimate that the advisory guideline sentencing range in this case is from 235 to 293 months of imprisonment.  The crime of conviction has a statutory cap of 240 months (20 years).

Pursuant to Rule 11(c)(1)(C), the parties stipulate and agree that the defendant should be sentenced to 240 months (20 years) of imprisonment.   The defendant also agrees that the Rule 11(c)(1)(C) sentence to which the parties have agreed, specifically, a sentence of 240 months of imprisonment, is a reasonable sentence.

If the Court decides that a sentence of more than 240 months is appropriate in this case, it shall advise the defendant of that fact, allow the defendant the opportunity to withdraw his plea, and advise him that if he persists in a guilty plea the disposition of the case may be less favorable to him than is contemplated by this Plea Agreement.   For example, the case could proceed to trial on the underlying indictment.

**D.  Departures or Other Enhancements or Reductions:**  Other than the adjustments or considerations expressly detailed in this Plea Agreement, such as those in Sections VI.B above, the parties stipulate and agree that they will not seek, or argue in support of, any other specific offense characteristics, Chapter Three adjustments, Chapter Four adjustments, Chapter Five adjustments, or

1  cross-references at the time of sentencing, except that the government may move for an adjustment

2  based on the defendant's post-plea obstruction of justice (U.S.S.G. § 3C1.1).

3  The parties also stipulate and agree that they will not argue for a sentencing variance from the

4  guidelines in this case under 18 U.S.C. § 3553(a).

## VII.    WAIVERS

### A.    Waiver of Constitutional Rights

7  The defendant understands that by pleading guilty he is waiving the following constitutional

8  rights:  (a) to plead not guilty and to persist in that plea if already made; (b) to be tried by a jury; (c) to

9  be assisted at trial by an attorney, who would be appointed if necessary; (d) to subpoena witnesses to

10  testify on his behalf; (e) to confront and cross-examine witnesses against him; and (f) not to be

11  compelled to incriminate himself.

### B.    Waiver of Appeal and Collateral Attack

13  The defendant understands that the law gives him a right to appeal his guilty plea, conviction,

14  and/or sentence.  The defendant agrees as part of his plea, however, to give up the right to appeal any

15  aspect of the guilty plea, conviction, and/or sentence imposed in this case.  The defendant specifically

16  gives up the right to appeal any order of restitution the Court may impose.

17  In addition, the defendant also gives up any right to bring a collateral attack, including a motion

18  under 28 U.S.C. § 2255 or § 2241, challenging any aspect of the guilty plea, conviction, or sentence in

19  this case.

20  If the defendant ever attempts to vacate his plea, dismiss the underlying charges, or modify or set

21  aside any aspect of the sentence in this case, the government shall have the rights set forth in paragraph

22  II.E (Defendant's Violation of Plea Agreement) herein.

### C.    Waiver of Attorneys' Fees and Costs

24  The defendant agrees to waive all rights under the "Hyde Amendment," Section 617, P.L. 105-

25  119 (Nov. 26, 1997), to recover attorneys' fees or other litigation expenses in connection with the

26  investigation and prosecution of all charges in the above-captioned matter and of any related allegations

27  (including without limitation any charges to be dismissed pursuant to this plea agreement and any

28  charges previously dismissed).

1      **VIII. ENTIRE PLEA AGREEMENT**

2    Other than this plea agreement, no agreement, understanding, promise, or condition between the

3 government and the defendant exists, nor will such agreement, understanding, promise, or condition

4 exist unless it is committed to writing and signed by the defendant, counsel for the defendant, and

5 counsel for the United States.

6      **IX. APPROVALS AND SIGNATURES**

7   **A. Defense Counsel:**

8    I have read this plea agreement and have discussed it fully with my client. The plea agreement

9 accurately and completely sets forth the entirety of the agreement. I concur in my client's decision to

10 plead guilty as set forth in this plea agreement.

11

12 Dated:  5 - 6 - 2014         Donald H. Heller

13                DONALD H. HELLER
                 Counsel for Defendant

14   **B. Defendant:**

15    I have read this plea agreement and carefully reviewed every part of it with my attorney.  I

16 understand it, and I voluntarily agree to it.  I also read and reviewed the discovery provided by the

17 government, which reflected evidence of my criminal conduct.  Further, I have consulted with my

18 attorney and fully understand my rights with respect to the provisions of the Sentencing Guidelines that

19 may apply to my case. No other promises or inducements have been made to me, other than those

20 contained in this plea agreement.  In addition, no one has threatened or forced me in any way to enter

21 into this plea agreement. I have initialed each and every paragraph of this plea agreement. Finally, I am

22 satisfied with the representation of my attorney in this case.

23

24 Dated:  5 - 6 - 2014            

25                DEEPAL WANNAKUWATTE
                 Defendant

26

27 ///

28 ///

PLEA AGREEMENT      17

**C.**   **Attorney for United States:**

On behalf of the government, I accept and agree to this plea agreement between the government and the defendant, Deepal Wannakuwatte.

Dated:    5/6/14

BENJAMIN B. WAGNER
United States Attorney

MICHAEL M. BECKWITH
Assistant United States Attorney

**EXHIBIT "A"**

**Factual Basis for Plea**

If this matter proceeded to trial, the United States would establish the following facts beyond a reasonable doubt:

The defendant, Deepal Wannakuwatte, represented to victims that his companies, IMG and Relyaid, were involved in the international manufacture, shipment, and distribution of latex gloves. He falsely claimed IMG and Relyaid did tens of millions of dollars in business with federal agencies every year, most notably the Department of Veterans' Affairs (hereinafter the "VA"). By 2010, the defendant regularly claimed that IMG and Relyaid did over $100,000,000 worth of sales on an annual basis. These false representations, and others, caused the defendant to appear more credit worthy to his lenders, and made the defendant's companies look like a sound investment to individual investors. The defendant offered his investors several different investment opportunities, most of which related in one way or another to his purported relationship with the VA.

No later than on or about December 4, 2002, and continuing until on or about February 21, 2014, the defendant defrauded over 100 victims, including individuals, corporate entities, a tribal entity, and financial institutions, by making material false representations to his victims in order to obtain money under their control. The financial institutions defrauded by the defendant include, but are not limted to, Bank of America Corporation, Bridge Bank, and Key Equipment Finance, Incorporated. The defendant ultimately obtained over $150,000,000 by making a variety of material false representations to his victims. Contrary to his representations, the defendant used much of the money he obtained to (1) pay himself and his family, (2) make lulling payments to participants in his fraudulent investment schemes, and (3) pay outstanding debts unrelated to his false representations.

In addition to making a variety of misrepresentations, both orally and in writing, the defendant regularly provided his victims with fraudulent documents to support his misrepresentations.

For example, the defendant provided some of his victims with falsified corporate financial statements. Most commonly, the defendant provided investors with inflated financial statements that supported his claims that he had over $100,000,000 in sales with the VA. At times, the defendant gave investors and lenders financial statements that he claimed had been subjected to a specific level of

1  review by a certified public accountant ("CPA"). In truth and in fact, these financial statements were
2  false, and had not been reviewed by the CPA at the level represented by the defendant.

3          Additionally, the defendant often provided his victims with personal and corporate tax returns.
4  In some cases, the defendant provided these tax returns in support of an application for a line of credit
5  with a financial institution. In other cases, he used the tax returns as evidence of the financial health of
6  his companies, IMG and Relyaid, when dealing with individual investors. In truth and in fact, these tax
7  returns falsely overstated his annual personal income and the annual gross receipts/sales for IMG.

8          The defendant also regularly provided his victims with false ledgers from IMG and Relyaid. The
9  ledgers were provided in support of the defendant's application for lines of credit with financial
10  institutions, and they were used to market his companies to investors. Some ledgers falsely showed tens
11  of millions of dollars in accounts receivable from the VA. Other ledgers falsely showed tens of millions
12  of dollars in glove inventory.

13         At times, the defendant also set up fake conference calls between himself, a victim, and a person
14  who he directed to act as a VA representative. The conference calls were made on behalf of victims to
15  verify the value of the contracts and the relationship the defendant claimed to have with the VA. By
16  2013, the defendant regularly claimed to have over $125,000,000 in VA contracts alone. In truth and
17  fact, he had a single, five-year contract authorizing $25,000 of business each year.

18         The defendant admits that he knowingly devised and participated in a scheme to defraud and
19  obtain money or property by means of false and fraudulent pretenses, representations, and promises.
20  The defendant also admits that he acted with the intent to defraud, that is, the intent to deceive or cheat,
21  and that the statements he made as part of his scheme were material; that is, they had a natural tendency
22  to influence, or were capable of influencing, a person to part with money or property.

23         The defendant regularly used, and caused the use of, wire communications to carry out an
24  essential part of his scheme. Specifically, he used wire transfers to collect the proceeds of his scheme.
25  ///
26  ///
27  ///
28  ///

PLEA AGREEMENT                          A-2

1      For example, as a result of the defendant's material misrepresentations to a particular victim, that

2   victim initiated a wire transfer to invest money with the defendant. On February 14, 2014, the victim

3   sent $1,175,000 from an account in North Carolina to one of the defendant's accounts, account number

4   xxxxxx4841, in the Eastern District of California.

5      I have read and reviewed this factual statement and discussed its contents with my attorney. The

6   statements contained herein are true and correct.

7

8   Dated:    5-6-2014

DEEPAL WANNAKUWATTE

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLEA AGREEMENT         A-3