BENJAMIN B. WAGNER
United States Attorney
MICHAEL M. BECKWITH
Assistant United States Attorney
501 I Street, Suite 10-100
Sacramento, CA 95814
Telephone: (916) 554-2700
Facsimile: (916) 554-2900

Attorneys for Plaintiff
United States of America

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>DEEPAL WANNAKUWATTE,<br><br>Defendant. | CASE NO. 2:14-CR-067 TLN<br><br>GOVERNMENT'S SENTENCING MEMORANDUM AND MOTION FOR LEAVE TO FILE AFTER THE 5:00 PM DEADLINE |

From 2002 to 2014, the defendant, Deepal Wannakuwatte, ran a massive Ponzi scheme from his home and offices in the Sacramento area. Based on false representations about his companies, IMG and RelyAid, the defendant conned over 150 victims, including individuals, corporate entities, and financial institutions, out of over $230,000,000. Contrary to his representations, Wannakuwatte used much of the money he obtained to pay himself and his family, make lulling payments to participants in his fraudulent investment schemes, and pay outstanding debts unrelated to his false representations. As a result of lulling payments he made to his victims, the net loss in this case is over $108,000,000.

The defendant convinced his victims to invest in a number of business opportunities by making misrepresentations regarding the financial worth of himself and his companies. Wannakuwatte represented to victims that his companies, IMG and Relyaid, were involved in the international manufacture, shipment, and distribution of latex gloves. He falsely claimed that these companies did tens of millions of dollars in business with federal agencies every year, most notably the Department of

1

Veterans Affairs ("VA").  By 2010, Wannakuwatte told investors that IMG and Relyaid did more than $100 million worth of sales on an annual basis.  By 2013, Wannakuwatte claimed to have more than $125 million in VA contracts alone.  In fact, as Wannakuwatte ultimately admitted, those claims were false. Indeed, while he did have a contract with the VA, it was worth up to only $25,000 a year.

The defendant used a variety of false and fraudulent means to back up his claims of financial success.  For example, Wannakuwatte regularly provided investors with inflated financial statements that supported his claims that he had more than $100 million in sales with the VA.  He also regularly provided victims with false corporate ledgers from IMG and Relyaid.  Some ledgers falsely showed tens of millions of dollars in accounts receivable from the VA.  Other ledgers falsely showed tens of millions of dollars in glove inventory.  Investigators recovered a number of these fraudulent documents when they searched the defendant's home and business in 2014.

The defendant also provided his victims with personal and corporate tax returns.  Wannakuwatte actually reported and paid taxes on returns that falsely overstated his annual personal income and the annual gross receipts and sales for IMG.  He used these returns to establish his financial credibility with financial institutions and individual investors.

On at least two occasions, the defendant set up fake conference calls between himself, a victim, and a person whom he directed to act as a VA representative.  The conference calls were made on behalf of victims to verify the value of the VA contracts and the relationship Wannakuwatte claimed to have with the VA.  The defendant's 12-year fraud scheme was extremely deliberate and highly calculated.

Sentencing Recommendation

The government asks the Court to issue a sentence in accordance with the plea agreement in this case.  Specifically, the government asks the Court to impose a sentence of 240 months of imprisonment, a fine of $25,000, a three-year term of supervised release, and a $100 special assessment.  The government also asks that the preliminary order of forfeiture filed in this case be made final as to the defendant and, thereafter, be incorporated into the Court's judgment.

The defendant is 63 years old.  Given his age, a 20-year sentence is sufficient but not greater than necessary to reflect the seriousness of his conduct and provide just punishment.  The sentence will also insure the public is protected from the defendant for a number of years and, in doing so, will promote

respect for the law. While the defendant's conduct and the strength of the evidence against him[1] would arguably support multiple consecutive sentences in excess of 20 years, the defendant's early acceptance of responsibility demonstrated some degree of contrition. Additionally, the early plea in this case saved time and resources. This is a complex case that would have required the expenditure of a tremendous amount of limited resources to bring to trial. The defendant's fraud scheme stretch from California to North Carolina and beyond; in fact, the last con the defendant was working on involved a multi-million dollar deal with a government-owned corporation in China.

<u>Procedural Issues</u>

The government seeks leave to file its sentencing memorandum after the Court's 5:00 p.m. deadline. The following is not an excuse, merely an explanation. This is an unusually complex case, and for the past three days the government has been working to finalize a number of issues relating to forfeiture and restitution. Some of these issues may affect two related bankruptcy cases filed in the Eastern District of California: case numbers 2:14-bk-25820 and 2:14-bk-25816.

Most importantly, the government, the probation officer, and investigators have been working to refine the net loss and restitution figures. The work currently being done will not affect the guideline calculations. The undisputed loss amount in this case is over $100,000,000.[2] The work is being done to insure that the restitution figures ordered by the Court are as accurate as possible as to each of the 157 victims in this case. That work was completed around 4:00 p.m. today. The work will need to be reviewed by the probation officer and the parties in the morning.

The government will offer the defendant a stipulation tomorrow that will reflect the finalized loss and restitution figures. If accepted, the stipulation will result in an amendment to the current PSR. The stipulation is expected to reflect an increase in the gross loss amount (now over $230,000,000), but should also reflect a reduction in the net loss amount (the amount upon which the guidelines and restitution are based) from over $112,000,000 to over $108,000,000.

---

[1] The evidence in this case included, but was not limited to, numerous audio recordings, extensive bank records, a wide variety of witness testimony, and many falsified documents created by the defendant. The evidence in this case clearly demonstrated that the defendant was a gifted con artist who boldly sold a multitude of falsehoods.

[2] The government asks the Court to make the finding that "the loss amount in this case is over $100,000,000."

1  Currently, there are no objections from either party to the PSR. No new objections are expected. Since the proposed modification to the PSR benefits the defendant, the government believes he will agree to the stipulation. The stipulation and its proposed modification to the loss and restitution figures will be reflected in the probation officer's amended PSR.

Shortly, the government will issue a notice to each victim in this case regarding the restitution figures. The restitution calculations are based on a review of victim impact statements and a host of financial records. To account for any additional information that may not have been received, the government asks, pursuant to 18 U.S.C. § 3664(d)(5), that the Court set a date no more than 90 days from the date of sentencing "for the final determination of the victim's losses." This will allow the Court to finalize its restitution order in light of any new information provided by any of the victims in this case.

Dated: July 31, 2014

BENJAMIN B. WAGNER
United States Attorney

/s/ Michael M. Beckwith
MICHAEL M. BECKWITH
Assistant United States Attorney